UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.     CASE NO:   3:19-cr-109-MMH-JRK
       3:17-cr-063-MMH-JRK

RONALD LEON BRONNER     ORDER ON MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A)

## ORDER

Upon motion of ☒ the defendant ☐ the Director of the Bureau of Prisons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), and after considering the applicable factors provided in 18 U.S.C. § 3553(a) and the applicable policy statements issued by the Sentencing Commission, IT IS ORDERED that the motion is:

☒ GRANTED IN PART to the extent Defendant's term of imprisonment is reduced to **62 months.**

☒ FACTORS CONSIDERED

Defendant Ronald Leon Bronner is a 53-year-old inmate incarcerated at FMC Lexington, serving a 120-month term of imprisonment for possession with intent to distribute 28 grams or more of cocaine base. (Doc. 86,

Judgment).¹ According to the Bureau of Prisons (BOP), he is scheduled to be released from prison on November 2, 2026. Bronner seeks compassionate release because of a serious, deteriorating liver condition and because of the risk he would die were he to contract Covid-19. (Doc. 91, Motion for Compassionate Release). The United States responded in opposition (Doc. 93, Response) and submitted sealed medical records (Doc. 95-1, Medical Records Vol. I; Doc. 95-2, Medical Records Vol. II), which the Court has considered. The warden of FMC Lexington denied Bronner's request for a reduction in sentence (RIS). (Doc. 93-5).

## I.  Law

Ordinarily, a district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). However, as amended by the First Step Act, § 3582(c) provides:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that … extraordinary and compelling reasons warrant such a reduction … and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

---

¹   Unless otherwise indicated, "Doc. __" refers to docket entries in Case No. 3:19-cr-109-MMH-JRK. Bronner is also serving a concurrent 51-month term of imprisonment in Case No. 3:17-cr-63-MMH-JRK for violating the conditions of supervised release.

18 U.S.C. § 3582(c)(1)(A)(i).

The relevant policy statement is U.S.S.G. § 1B1.13. The policy statement provides:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> **(1)(A)** Extraordinary and compelling reasons warrant the reduction; or
>
> **(B)** The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
> **(2)** The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> **(3)** The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13. The application notes define four circumstances that qualify as "extraordinary and compelling reasons" for a reduction in sentence: (A) a terminal illness or a serious medical condition, (B) old age, (C) certain family circumstances, and (D) other reasons, other than or in combination with those listed in (A) through (C), as determined by the BOP Director. U.S.S.G. § 1B1.13, cmt. 1. The Eleventh Circuit has held that § 1B1.13's substantive criteria govern motions for compassionate release filed by the BOP and defendants alike. United States v. Bryant, 996 F.3d 1243, 1247–48 (11th Cir.

2021). The Eleventh Circuit has also held that "Application Note 1(D) does not grant discretion to courts to develop 'other reasons' that might justify a reduction in a defendant's sentence." Id. at 1248.

"[B]y dint of § 3582(c)(1)(A)'s plain text, a district court may reduce a term of imprisonment if (1) the § 3553(a) sentencing factors favor doing so, (2) there are 'extraordinary and compelling reasons' for doing so, and … (3) doing so wouldn't endanger any person or the community within the meaning of § 1B1.13's policy statement." United States v. Tinker, 14 F.4th 1234, 1237 (11th Cir. 2021); see also United States v. Giron, 15 F.4th 1343, 1346 (11th Cir. 2021) (same). However, "nothing on the face of 18 U.S.C. § 3582(c)(1)(A) requires a court to conduct the compassionate release analysis in any particular order." Tinker, 14 F.4th at 1237.

## II.   Discussion

### 1. *Extraordinary and Compelling Reasons*

Insofar as Covid-19 is concerned, the pandemic does not qualify as an extraordinary and compelling reason warranting compassionate release. 18 U.S.C. § 3582(c)(1)(A). Bronner has (wisely) accepted both doses of the Moderna Covid-19 vaccine. Medical Records Vol. I at 122; Medical Records Vol. II at 94–96. According to the available data, the Covid-19 vaccines are highly effective at preventing death or serious illness from Covid-19, including

against emerging variants.² As other circuits have observed, the Covid-19 pandemic does not present an extraordinary and compelling circumstance for prisoners who have access to the Covid-19 vaccine. United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021); United States v. Ugbah, 4 F.4th 595, 597 (7th Cir. 2021); United States v. Lemons, 15 F.4th 747, 751 (6th Cir. 2021). Thus, the Court declines to find that the Covid-19 pandemic provides a basis for a finding of "extraordinary and compelling reasons."³

However, to the extent Bronner relies on his liver condition as a stand-alone basis for compassionate release, without regard to Covid-19, the Court finds that his advanced liver disease qualifies as a "serious medical condition" under U.S.S.G. § 1B1.13, Application Note 1(A). The record reflects that Bronner has severe cirrhosis of the liver, hepatitis B, and hypertension. (Doc. 84, Final PSR ¶¶ 86–90); Medical Records Vol. I at 62, 70, 114; Medical Records Vol. II at 66–80, 90–92, 100–01. On July 1, 2020, while this case was pending, Bronner suffered a stroke while hospitalized to remove fluid from his abdomen. PSR ¶ 89. After the hospital discharged Bronner, his case manager at North Florida Regional Medical Center advised the U.S. Marshals "to prepare for end

---

² https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html.

³ Although little is known about the recently-identified Omicron variant of the coronavirus, scientists are optimistic that existing vaccines still offer some protection. https://www.cnbc.com/2021/11/29/omicron-variant-spreads-across-world-heres-what-we-know.html.

5

of life care upon his return to [the] jail facility due to the severity of his cirrhosis and the likelihood that his condition will continue to worsen." Id. Bronner's conditions were sufficiently serious that the Court recommended he be "promptly designated to FCC Butner" "[i]n light of Defendant's significant life-threatening health conditions." Judgment at 2.

The medical records reflect that Bronner's current facility, FMC Lexington, is attentive to his medical needs and offers treatment, routine monitoring, and outside referrals when necessary. See generally Medical Records Vol. I; Medical Records Vol. II. But the records also reflect that Bronner continues to suffer complications from his liver disease, including a recurring umbilical hernia, Medical Records Vol. I at 3, 12, 19; Medical Records Vol. II at 51–54, 66–80, which occurs in about 20% of people with cirrhosis of the liver complicated by ascites (fluid in the abdomen). Umbilical hernia in patients with liver cirrhosis: A surgical challenge, Coelho, Julio, et al., World J. Gastrointest. Surg. (July 27, 2016), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4942747/. Such a hernia may occur suddenly "[d]ue to the enormous intraabdominal pressure secondary to the ascites." Id.

The Court finds that Bronner's liver disease satisfies the definition of a terminal illness. U.S.S.G. § 1B1.13, cmt. 1(A)(i). For a condition to qualify as a terminal illness, the defendant must be suffering from "a serious and advanced illness with an end of life trajectory." Id. However, "[a] specific prognosis of life

6

expectancy (i.e., a probability of death within a specific time period) is not required." Id.[4] Examples of a terminal illness "include … end-stage organ disease." Id. There is no question Bronner suffers from serious, advanced cirrhosis of the liver and hepatitis B. Bronner's case manager at North Florida Regional Medical Center instructed the U.S. Marshals to prepare to provide Bronner with "end of life care" due to the advanced nature of his disease. Based on the available information, the Court concludes that Bronner has a "terminal illness" as defined in § 1B1.13, cmt. 1(A)(i).

### 2. *Public Safety*

The policy statement provides that a court may grant a reduction in sentence only if "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Under § 3142(g), a court must consider four factors: (1) "the nature and circumstances of the offense charged," including whether the offense involved a controlled substance or a firearm, (2) "the weight of the evidence against the person," (3) "the history and characteristics of the person," including family ties, community ties, past conduct and criminal history, and

---

[4] Moreover, in contrast with Application Note 1(A)(ii) (serious medical or physical condition or other impairment), a "terminal illness" need not "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility." Thus, evidence that Bronner can provide self-care within the prison facility does not necessarily defeat a showing that he has a terminal illness.

7

"record concerning appearances at court proceedings," and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

Having considered these factors and the record, the Court concludes that Bronner likely will not pose a danger to another person or to the community when he is released from prison. The Court recognizes that Bronner distributed cocaine base and heroin (although only relatively small quantities were proven); that he maintained a premises for that purpose; and that law enforcement found one firearm on those premises and four firearms at a different residence. PSR ¶¶ 18, 28, 30. However, the Court found insufficient evidence of a connection between Bronner, the weapons, and the drug offense to apply the weapons enhancement under U.S.S.G. § 2D1.1(b)(1). (See Doc. 87, Statement of Reasons). There is no evidence Bronner used force or threats of violence in relation to the instant offense. See PSR ¶¶ 10–23. And except for a 32-year-old conviction for robbery with a weapon, Bronner lacks a history of convictions for violent offenses (although the Court does not minimize the remainder of his criminal history). In this case, Bronner accepted responsibility, pleaded guilty, and expressed remorse for the offense. Id. ¶ 26.

Bronner also has family and community ties that weigh in his favor. The Court received a letter from a relative, Kentra Bronner, in which Ms. Bronner states that she and several of her family members support Bronner's release.

(Doc. 96, Letter). Ms. Bronner further states that she, along with several of her family members, are medical professionals who are prepared to help care for Bronner when he is no longer in prison. Under all the circumstances, the Court concludes that Bronner likely will not pose a danger to another person or to the community upon his release.

### 3. *Section 3553(a) Factors*

Finally, after consideration of the § 3553(a) factors, the Court concludes that reducing Bronner's term of imprisonment to 62 months is appropriate. Reducing Bronner's term of imprisonment to time-served (or approximately 43 months) is not warranted because the instant offense marked Bronner's second federal controlled substance conviction and his eighth felony conviction. PSR ¶¶ 41–61. Despite being on supervised release, he committed the instant offense a little more than a year after being released from prison for a previous federal conviction for conspiracy to distribute 50 grams or more of cocaine base. Id. ¶¶ 61, 63. A sentence of greater than 43 months is necessary to promote respect for the law and to afford adequate deterrence.

That said, Bronner's current term of imprisonment of 120 months is not necessary to accomplish the statutory purposes of sentencing. The Court originally imposed the prison term of 120 months, despite Bronner's serious medical condition, because it was the mandatory minimum. In the absence of

the mandatory minimum, the Probation Office calculated Bronner's advisory guidelines range to be 57 to 71 months. See PSR ¶ 107. The Court is of the view that a sentence within his calculated guidelines range of 57 to 71 months would satisfy the objectives of § 3553(a). As the Court noted earlier, the instant offense did not involve a large quantity of drugs; Bronner accepted responsibility for the crime and expressed remorse; and he is suffering from a serious advanced liver disease. Bronner has a supportive family that is prepared to assist him with medical care when he is released.

In reducing Bronner's term of imprisonment to 62 months, the Court estimates he would be released from prison in September 2022 (assuming he receives full good-time credit). Such a release date will give Bronner and his family adequate time to make arrangements for his release. In addition, Bronner may be eligible for home confinement six months beforehand, or in March 2022. See 18 U.S.C. § 3624(c)(2). The Court recommends that the BOP closely monitor Bronner's condition and determine, in its discretion, whether to transfer Bronner to home confinement at that time.

When Bronner is released from prison, he will be under the watchful supervision of the Probation Office. The Court cannot say with certainty whether or not Bronner will reoffend. If he does, he will likely be reimprisoned and may not get another chance. However, the Court is optimistic that Bronner's medical diagnosis has taught him that his time is valuable and he

must make the most of it.

Accordingly, it is hereby **ORDERED**:

1. Defendant Ronald Leon Bronner's Motion for Compassionate Release (Doc. 91; Case No. 3:17-cr-63-MMH-JRK, Dkt. 67) is **GRANTED IN PART** to the extent Bronner's term of imprisonment is **REDUCED** to **62 months**.

2. In all other respects, the terms of the Judgment (Doc. 86) and Judgment of Revocation (Case No. 3:17-cr-63-MMH-JRK, Dkt. 66) remain unchanged.[5]

**DONE AND ORDERED** at Jacksonville, Florida this 7th day of December, 2021.

*MARCIA MORALES HOWARD*
MARCIA MORALES HOWARD
United States District Judge

lc 19

Copies to:
Pro se defendant
Counsel of record
Bureau of Prisons, Designation and Sentence Computation Center
Warden, FMC Lexington
United States Probation Office

---

[5] Because the Judgment of Revocation in Case No. 3:17-cr-63-MMH-JRK imposed a 51-month term of imprisonment that is concurrent with the term of imprisonment in Case No. 3:19-cr-109-MMH-JRK, it is not necessary to alter the 51-month term of imprisonment in the revocation case.

11